**S.L.K. TESTAMENTARY TRUST, a/k/a S.L.K. Testamentary Trust of the Estate of Dorothy Lewis, Deceased, Sallie L. Keefe, Trustee, David B. Keefe, Sallie L. Keefe, Amy Keefe and Mary Keefe Cunningham, Petitioners,**

v.

**Donald James DAVIDS, Marjorie Suzann Davids, Gerald N. Weaver, Gerald N. Weaver and Associates, P.C., F.J. Serafini, Public Trustee in and for the City and County of Denver, State of Colorado, Respondents.**

**No. 84SC416.**

Supreme Court of Colorado,
En Banc.

Dec. 2, 1986.

Richard D. Gilson, Denver, for petitioners (appearance withdrawn after briefs filed).

Stutz, Dyer, Miller & Delap, Charles A. Miller, Jeremiah B. Barry, Denver, for respondents.

LOHR, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *S.L.K. Testamentary Trust v. Davids*, 692 P.2d 1147 (Colo.App.1984). In that case, the court of appeals held that under the terms of section 38–39–102, 16A C.R.S. (1982 & 1985 Supp.), a co-signer of a promissory note is not entitled to notice of a right to redeem property that has been sold pursuant to the foreclosure of a deed of trust securing that promissory note. The court concluded that because the plaintiff/co-signer in this case was not entitled to notice of redemption rights, the public trustee's deed issued to the defendants, who purchased the property at the foreclosure sale, was valid, despite the absence of notice to the plaintiff. We agree with the court of appeals' interpretation of the notice provisions of section 38–39–102 and conclude as well that the plaintiff/co-signer was not prejudiced by the lack of notice because his right of redemption was extinguished when the full amount of the promissory note was paid at the foreclosure sale. Therefore, we affirm.

I.

In 1982, one of the plaintiffs in this action, the S.L.K. Testamentary Trust (S.L.K. trust), owned real property on South Fillmore Street in Denver. On January 12, 1982, the S.L.K. trust, by Sallie L. Keefe as trustee, executed a deed of trust on the property in favor of Donald James Davids and Marjorie Suzann Davids (defendants). The deed of trust secured a promissory note dated January 12, 1982, which was signed by Sallie L. Keefe as trustee of the S.L.K. trust and co-signed by David B. Keefe and Sallie L. Keefe, individually. Later that year, the defendants began proceedings to foreclose their deed of trust against the Fillmore Street property pursuant to an order authorizing sale issued by the Denver District Court. *See* C.R.C.P. 120. The public trustee of the City and County of Denver conducted a public sale of the property on November 16, 1982, at which time the defendants successfully bid on the property and received a certificate

of purchase. No redemption occurred during the period allowed by statute. Therefore, on February 14, 1983, the defendants received a public trustee's deed to the property.

The Keefes maintained possession of the property throughout the foreclosure proceedings, prompting the defendants to file an unlawful detainer action in Denver County Court several days after they obtained the public trustee's deed. The S.L.K. trust and the Keefes filed the present action in Denver District Court, claiming, among other things, that the public trustee did not give adequate notice to David Keefe of his right to redeem the property from foreclosure, resulting in damages of almost $36,000 to David Keefe.[1] In addition to damages, the plaintiffs asked that the public trustee's deed and foreclosure sale be set aside.[2] The unlawful detainer action was transferred to district court and consolidated with the Keefes' action. The district court then held a hearing to determine which party was entitled to possession of the property. The court concluded that section 38–39–102, 16A C.R.S. (1982 & 1986 Supp.), did not require the public trustee to notify David Keefe of his right to redeem the property, and that the S.L.K. trust and the Keefes therefore had committed an unlawful detainer of the property. The district

court entered judgment for possession in favor of the defendants. The S.L.K. trust and the Keefes appealed,[3] and the court of appeals affirmed, agreeing with the district court's interpretation of the statutory notice requirements.

## II.

Colorado law provides that within seventy-five days of the date of sale of nonagricultural real estate by virtue of foreclosure of a deed of trust, the owner of the property or "any person who might be liable upon a deficiency" may redeem the property by paying to the public trustee the amount for which the property was sold along with interest and other proper charges. § 38–39–102(1), 16A C.R.S. (1982). As a co-signer of the note secured by the foreclosed deed of trust in this case, David Keefe was potentially liable for the amount, if any, of the promissory note not realized from the sale of the property. Thus, at least while there was a prospect of a deficiency, David Keefe was a person who might be liable upon a deficiency, a category of persons to whom section 38–39–102(1) accords redemption rights.

The defendants do not dispute that David Keefe had a right to redeem the property during the statutorily-prescribed time period.[4] Instead, they argue that later subsections of section 38–39–102 exclude David

---

1. No question was raised as to the sufficiency of the notice to Sallie L. Keefe individually or in her capacity as trustee. The fact that the Keefes jointly occupied the property encumbered by the deed of trust suggests that David Keefe may have had actual notice of his redemption right, but this cannot be verified from the record. The trial court made no finding concerning whether David Keefe had actual notice.

2. Although for convenience we refer to only Donald James Davids and Marjorie Suzann Davids as the defendants and to the S.L.K. trust and the Keefes as the plaintiffs in the body of this opinion, there were additional parties. The public trustee was named as a defendant as well, because the plaintiffs sought to set aside the public trustee's deed. Amy Keefe and Mary Keefe Cunningham also were named as plaintiffs and Gerald N. Weaver and Gerald N. Weaver and Associates, P.C., were named as additional defendants, all in connection with separate claims for relief. Those claims were based upon the alleged failure of Weaver to record

certain deeds of trust promptly, with the result that Amy Keefe and Mary Keefe Cunningham, beneficiaries under those deeds of trust, were not notified of their redemption rights until those rights had expired. The present appeal does not relate to those claims for relief.

3. Both parties state in their briefs that the district court certified its judgment as final under C.R.C.P. 54(b), thus permitting an appeal by the S.L.K. trust and the Keefes. The record does not contain a copy of the district court's certification, and no litigant argues that the certification was not proper. Therefore, we have no reason to question that this action is properly before us on appeal.

4. But see the discussion in part III of this opinion. There, we conclude that David Keefe's redemption right was extinguished when the foreclosure sale resulted in a purchase of the property for an amount sufficient to pay the promissory note and costs of sale in full.

Keefe, as well as any other co-signer of a promissory note secured by the deed of trust, from the class of persons to whom the public trustee must send notice of the right to redeem. David Keefe, on the other hand, argues that those subsections must be read to require notification of persons in his position or else the redemption right granted in subsection (1) would be rendered ineffective.

The two subsections that spawn these conflicting interpretations read as follows:

(4) In the case of a foreclosure sale by a public trustee, the public trustee, at least twenty-one days prior to the date on which the sale is originally scheduled by the public trustee, shall mail a notice to the grantor of the deed of trust being foreclosed, to any subsequent owner of record, *and to any other person having the right to redeem the premises under subsection (1) of this section,* informing such persons of their redemptive rights, if any, under this section.

(5) The public trustee shall mail such notice to the persons described in subsection (4) of this section *only if their interest in the real estate being foreclosed was established by an instrument recorded with the county clerk and recorder of the county in which said real estate is located subsequent to the recording of the deed of trust being foreclosed and prior to the recording of the notice of election and demand for sale* pursuant to section 38–37–113(1). Said notice shall be mailed to such persons at the address given in the recorded instrument evidencing their interests. Postage costs under this section shall be part of the foreclosure costs.

§ 38–39–102(4) & (5), 16A C.R.S. (1982) (emphasis added).[5] Subsection (4), by reference to subsection (1), requires the public trustee to send notice to any persons who might be liable on a deficiency, but subsection (5) clearly limits the notification requirement to those persons who have an interest in the foreclosed property that was established by an instrument recorded after the deed of trust being foreclosed and before the notice of election and demand for sale. The meaning of the statutory language is plain and free from ambiguity, so we must give the statute effect in accordance with its terms. *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227, 230 (Colo.1984); *American Metal Climax, Inc. v. Butler's Claimant,* 188 Colo. 116, 119, 532 P.2d 951, 952 (1975). Therefore, David Keefe, whose interest did not appear of record, was not entitled to receive notice of his right to redeem. § 38–39–102(4) & (5), 16A C.R.S. (1982).

The plaintiffs argue, however, that to construe the statute in a manner that denies David Keefe the right to notice of his redemption right seriously diminishes the value of the redemption right, a result that could not have been intended by the General Assembly. They contend that such a construction violates the requirement that a statute be construed as a whole so as to give consistent, harmonious and sensible effect to all of its parts. *See, e.g., Massey v. District Court,* 180 Colo. 359, 364, 506 P.2d 128, 130 (1973). We do not agree with this assessment of the statutory scheme.

The reasons for the statutory limitation of the notice requirements to persons whose interests appear of record are clear and compelling. The public trustee has no ability to ascertain with certainty the existence of persons who are accorded a right to redeem under section 38–39–102(1) but whose interests do not appear from the records of the public trustee or the clerk and recorder.[6] Therefore, unless the re-

---

**5.** § 38–39–102(4) was first adopted in 1975. Ch. 333, sec. 1, § 38–39–102(4), 1975 Colo.Sess.Laws 1442, 1442. It was repealed and reenacted in its present form in 1977. Ch. 492, sec. 3, § 38–39–102(4), 1977 Colo.Sess.Laws 1723, 1725. § 38–39–102(5) was first adopted in 1977, *id.* at 1724, and has not been amended.

**6.** When at the commencement of foreclosure proceedings a bond is filed with the public trust-

ee in lieu of the original promissory note, *see* § 38–37–113, 16A C.R.S. (1986 Supp.), or a guaranty of the promissory note is made by instrument separate from the note, the public trustee has no means of ascertaining the existence of co-signers or guarantors except as this information may be supplied by the beneficiary of the deed of trust.

quirement of notice is limited to persons holding interests ascertainable from examination of those sources, there can be no assurance that any public trustee foreclosure is not flawed by lack of mandated notice. For the same reason, purchasers at a foreclosure sale cannot be certain that the sale procedures are in compliance with the requirements for notice of redemption rights unless the persons entitled to such notice can be ascertained by examination of the public records. Such uncertainty might well discourage persons from bidding at public trustee sales and would undermine the stability of title to property obtained through public trustee foreclosures. In order to obviate these difficulties and to promote security of titles, the legislature has seen fit to limit the requirement of notice to those persons whose redemption rights can be ascertained from an examination of the clerk and recorder's records.

■ This limitation on the requirement of notice need not have the effect of diminishing the value of redemption rights or of failing to accord due process of law to the holder of such a right, as the plaintiffs maintain. A document creating a right of redemption gives rise to an inchoate interest in real property and therefore is an instrument affecting the title to real property within the meaning of section 38–35–109(1), 16A C.R.S. (1982). As a result, such a document is entitled to be recorded under the authority of that statute. A person such as David Keefe can assure that he will receive notice under subsections (4) and (5) of section 38–39–102 by requiring at the outset that his contingent obligation to pay a promissory note be set forth in an instrument in recordable form and be recorded in the records of the county clerk and recorder subsequent to recordation of the deed of trust securing the promissory note guaranteed. We agree with the court of appeals that the construction of the statutory notice requirement that we adopt "places the burden, as it should be, on the parties claiming the right to a redemption notice." *S.L.K. Testamentary Trust v. Davids*, 692 P.2d at 1149–50.[7]

### III.

■ We conclude that in any event David Keefe's right of redemption was extinguished by the foreclosure sale and for this independently sufficient reason, not addressed by the parties, the plaintiffs cannot prevail. David Keefe's right of redemption was dependent upon his status as one who "might be liable upon a deficiency" on the promissory note secured by the deed of trust being foreclosed. § 38–39–102(1), 16A C.R.S. (1982). When the foreclosure sale resulted in a purchase price sufficient to pay the promissory note and associated costs in full, the prospect of a deficiency disappeared and David Keefe's right of redemption was terminated.[8]

While the object of allowing an owner to redeem is to protect the owner by extending the time available to occupy the property and attempt to refinance the loan, the reason for allowing redemption by a person liable for a deficiency is quite different. F. Storke & D. Sears, *Colorado Security Law* § 69, at 208 (1955). The rationale for according a redemption right to a person liable for a deficiency is based on the fact

---

7. The plaintiffs argue that to construe the statute literally yields the absurd result that the grantor of the deed of trust being foreclosed need not receive notice because that grantor's interest was not "established by an instrument recorded with the county clerk and recorder ... subsequent to the deed of trust being foreclosed...." § 38–39–102(5), 16A C.R.S. (1982). We agree that to hold that a grantor need not receive notice would carry literalism to an excess. However, the grantor's interest will always appear of record, and the reasons that militate against requiring notice to holders of unrecorded interests do not pertain. We believe that a common sense reading of § 38–39–102(5) sup-

ports the requirement that notice be given to the grantor of the deed of trust being foreclosed. We note, however, that under § 38–39–102(1) the grantor has a right to redeem only if the grantor is an owner of the premises or a person who might be liable upon a deficiency.

8. The record does not explicitly establish that the purchase price was sufficient to pay the note in full. However, the defendants' brief states that "[a]t the public trustee sale, the Davids bid in the full amount due under the promissory note," and the plaintiffs have not suggested that the statement is inaccurate.

that such a person is usually a surety for the owner. The redemption right stems from a policy of suretyship protection and has the effect of enlarging the surety's right of subrogation. *Id.* Therefore, while the effect of redemption by an owner is to "annul the sale and leave the premises subject to all liens which would have existed if no sale had been made, except the lien of the foreclosed mortgage which shall be discharged by the sale," a redemption by one "because of a deficiency liability on the foreclosed lien ... shall annul the sale and leave the person so redeeming the owner of the lien so redeemed from, to the full extent thereof, including all extra costs and expenses paid by such redemptionor who shall nevertheless still be liable for such deficiency." § 38–39–105, 16A C.R.S. (1982). The redemption by a person based upon a deficiency liability results in that person becoming the holder of the obligation secured by the lien redeemed from and becoming entitled to foreclose if the lien remains unpaid. F. Storke & D. Sears, *supra,* § 69, at 208–09. When the potential liability for a deficiency disappears, the need for the right of redemption to protect the person who had been subject to that potential liability disappears as well. Therefore, when the purchase price at a foreclosure sale is sufficient to pay the full amount of a secured indebtedness for which a co-signer or guarantor of the promissory note is potentially liable, the right of such person to redeem is extinguished. *Id.*

A right of redemption based on a potential liability for a deficiency, therefore, can fairly be characterized as inchoate. When the foreclosure sale produces a purchase price adequate to pay the secured obligation in full, the inchoate right is extinguished. For this reason, absence of notice to David Keefe did not prejudice him, for his inchoate right was destroyed before any redemption right could be exercised. For this independent reason, therefore, the absence of notice had no adverse effect on David Keefe and did not flaw the procedures leading up to the issuance of the public trustee's deed.

We affirm the judgment of the court of appeals.